# IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CRIMINAL NO. 2009-009 |
| v. | ) | |
| | ) | |
| COURTNEY JACKSON | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## MEMORANDUM OPINION

FINCH, SENIOR JUDGE

THIS MATTER comes before the Court on Defendant's Motion to Suppress filed on July 31, 2009. After consideration and upon review of the briefs submitted by the parties, the Court issues the following ruling.

## I. FACTUAL BACKGROUND

Defendant Courtney Jackson was indicted by a federal grand jury on April 21, 2009 for numerous drug and weapons related charges. On April 1, 2009, the Drug Enforcement Agency's High Intensity Drug Trafficking Area ("DEA-HIDTA") Task Force executed a search warrant[1] at Jackson's home located at #212 Estate Hannah's Rest in Frederiksted, St. Croix and inside a black Dodge Ram pickup truck owned and operated by Jackson. At the time of the search, the black pickup truck was parked in front of Jackson's home. Law enforcement authorities found one-quarter of a kilogram of powder cocaine, a semi-automatic assault weapon with an

---

[1] The search warrant was issued by the Magistrate Judge on March 31, 2009, authorizing the search of Jackson's black Dodge Ram pickup truck and his property located at #212 Estate Hannah's Rest in Frederiksted, St. Croix.

obliterated serial number, and a semi-automatic pistol inside Jackson's Black Dodge Ram pickup truck.

Subsequently, Jackson was named in a five count indictment charging him with possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1), possession of an assault weapon during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c), possession of a firearm with an obliterated serial number in violation of 18 U.S.C. § 924(k), and possession of unlicensed firearms in violation of 14. V.I.C. § 2253(a).

Jackson now seeks suppression of the evidence found at his residence and inside his pickup truck, alleging that the search warrant contravened his Fourth Amendment rights.[2] Defendant claims that the affidavit accompanying the warrant did not establish probable cause necessary to issue the warrant. See Def.'s Mem. in Supp. of Mot. to Suppress at 1. Defendant claims that the underlying affidavit contained no facts to show probable cause to believe that items authorized for search and seizure would be kept at his home and in his vehicle. Id. at 3. Additionally, Defendant argues that the warrant in this case lacked particularity and was constitutionally overbroad. Id. at 4-7.

## II.  PROBABLE CAUSE

---

[2] The exclusionary rule prohibits the introduction at trial of evidence obtained in violation of the Fourth Amendment, for the purposes of proving a defendant's guilt. See Sanchez-Llamas v. Oregon, 548 U.S. 331, 348(2006) ("[T]he Constitution requires the exclusion of evidence obtained by certain violations of the Fourth Amendment").

## A.  Standard of Review

The Fourth Amendment protects citizens from "unreasonable searches and seizures" of "their persons, houses, papers and effects." U.S. Const. amend. IV.[3]  The first clause of the Fourth Amendment protects citizens from governmental intrusions where they have a reasonable expectation of privacy. There is a presumptive requirement that searches or seizures be carried out pursuant to a search warrant.  See Katz v. United States, 389 U.S. 347, 357 (1967).  A search warrant must be obtained from a neutral and detached magistrate based "upon probable cause, supported by oath or affirmation and particularly describing the place to be searched, and the persons or things to be seized."  U.S. Const. amend. IV; see United States v. Acosta, 965 F.2d 1248, 1251 (3d Cir. 1992); Fed. R. Crim. P. 41.  The task of the magistrate who issues a search warrant is simply to make a practical common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.  See Illinois v. Gates, 462 U.S. 213, 235 (1983); see also Hill v. California, 401 U.S. 797, 804 (1971) ("[S]ufficient probability, not certainty, is the touchstone of reasonableness under the Fourth Amendment . . .").  There is a presumption of validity with respect to the affidavit supporting a search warrant and a defendant is not automatically entitled to a hearing when he challenges a search warrant.  United States v. Brown, 3 F.3d 673, 676-78 (3d Cir. 1993); see United States v. Motz, 936 F.2d 1021, 1023 (9th Cir. 1991).

---

[3]  The Fourth Amendment of the United States Constitution is made applicable to the Virgin Islands by the Revised Organic Act of 1954, § 3.  United States v. Charles, 290 F. Supp. 2d 610, 614 (D.V.I. 1999); see United States v. Mark, 2007 U.S. Dist. LEXIS 17878 (D.V.I. Feb. 23, 2007).

In <u>Illinois v. Gates</u>, the Supreme Court held that there is no black-letter test or standard to apply when determining whether information from an informant was sufficient to establish probable cause to support the issuance of a search warrant. <u>Gates</u>, 462 U.S. at 230-37. The court explained that a reviewing court must evaluate the "totality of the circumstances," considering both the circumstances under which the informant obtained the information, and the circumstances that led the affiant to believe that the informant was reliable. <u>Id</u>.; <u>see</u> <u>United States v. Ritter</u>, 416 F.3d 256, 263 (3d Cir. 2005). Under the totality of the circumstances test, the "basis of knowledge" and "veracity" prongs for assessing the usefulness of an informant's tips are relevant considerations. <u>Gates</u>, 462 U.S. at 233. Two factors that have been held to bolster an informant's reliability are firsthand observation and an explicit and detailed description of the events at issue. <u>Id</u>. at 234. Corroboration of details of an informant's tip by independent police work may add to the reliability or veracity of the source and <u>Gates</u> allows for the government to establish probable cause through additional investigation. <u>See id</u>.

### B. <u>Discussion</u>

Jackson contends that DEA-HIDTA Task Force Officer Christopher Howell's affidavit in support of the search warrant does not contain direct evidence that drugs or weapons would be found in the black pickup truck. <u>See</u> Def.'s Mem. in Supp. of Mot. to Suppress at 2-3. However, a supporting affidavit need not contain direct evidence that proof of wrongdoing would be present at the premises. <u>United States v. Conley</u>, 4 F.3d 1200, 1207 (3d Cir. 1993). "[D]irect evidence linking the place to be searched to the crime is not required for the search warrant." <u>Id</u>. "Instead, probable cause can be, and often is, inferred by 'considering the type of crime, the nature of the items sought, the suspect's opportunity for concealment and normal inferences

about where a criminal might hide [the] property.'" Id. (quoting United States v. Jones, 994 F.2d 1051, 1056 (3d Cir. 1993)).

In Gates, the Supreme Court held that there is no black-letter test for determining probable cause because "probable cause is a fluid concept – turning on the assessment of probabilities in particular factual contexts." Gates 462 U.S. at 232. The Third Circuit Court of Appeals also has held that the Magistrate's probable cause determination "should be paid great deference." United States v. Harvey, 2 F.3d 1318, 1322 (3rd Cir. 1993). The Third Circuit has warned against the practice of "overly compartmentaliz[ing]" the determination of probable cause. In re Application of Adan, 437 F.3d 381, 397 n.7 (3d Cir. 2006). Although the Supreme Court has cautioned against the Magistrate acting as a rubber stamp for the police, the Supreme Court has held that "where these circumstances are detailed, where reason for crediting the source of the information is given, and when a magistrate has found probable cause, the courts should not invalidate the warrant by interpreting the affidavit in a hyper technical, rather than a commonsense, manner. Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." United States v. Ventresca, 380 U.S. 102, 109 (1965); see also United States ex. rel Campbell v. Rundell, 327 F.2d 153, 163 (3d Cir. 1964) ("[P]robable cause which will justify the issuance of a search warrant is less than certainty of proof, but more than suspicion or possibility, the test being whether the allegations of the supporting affidavit warrant a prudent and cautious man in believing that the alleged offense has been committed").

In this case, Howell's affidavit explains that he received information from a tipster indicating that Jackson was using the property that he co-owned at #10 Estate Cane Valley, St. Croix, to grow marijuana. See Howell Aff. at 2-3. Howell also provided investigative information that corroborated what the tipster said. For example, Howell notes in his supporting affidavit that DEA-HIDTA has found marijuana growing on the #10 Estate Cane Valley property in the summer of 2008. Id. at 2. Additionally, he states that the black Dodge pickup truck had been seen at that property during a marijuana eradication operation, which took place in the summer of 2008. Id. In his affidavit, Howell further describes how he found marijuana being grown on another plot of land owned by Jackson in Estate Oxford, St. Croix. Id. at 3-4. This occurred in December 2008, just a few months after the observations of marijuana being grown on Jackson's Estate Cane Valley property. Id. at 4. Howell then describes his unsuccessful attempt to place a video camera to further investigation and verify the marijuana cultivation on the Estate Oxford property. Id. Howell states that "[o]n or around December 22, 2008, Task Force members went to the abandoned roadway adjacent to JACKSON's property in order to retrieve the recorder and replace it with a new one. Upon doing so, it was discovered that the surveillance equipment had been found and removed, along with the marijuana plants. In addition, a note had been left for law enforcement that read: "Fuck You." Id.

In his affidavit, Howell states that he investigated ownership of the Cane Valley property, and verified through the Virgin Island Recorder of Deeds that this property was, in fact, co-owned by Jackson. Id. at 2. Additionally, Howell states that Jackson owns and operates the black Dodge Ram pickup truck on page 5, paragraph 16, of the affidavit.[4] The Court finds that

---

[4] On page 2, paragraph 5 of the affidavit, Howell mistakenly states that the black Dodge Ram pickup truck was owned by Louis Danielson. However, Howell states that "Jackson owns and operates a Dodge

Howell's affidavit provides sufficient evidence for the Magistrate Judge to believe that the truck was owned and operated by Jackson. The vehicle is registered and titled in his name, and Jackson has taken out a loan from Scotia Bank to finance the purchase of the vehicle. <u>See</u> government's Opp'n to Def.'s Mot. to Suppress at 4.

In considering the totality of the circumstances to determine whether probable cause exists, courts are required to consider the cumulative weight of the information set forth by the investigating officer in connection with reasonable inferences that the officer is permitted to make based upon the officer's specialized training and experiences. <u>United States v. Arvizu</u>, 534 U.S. 266, 275 (2002). Howell avers that, based upon his training and experience, he had reason to believe that Jackson would store evidence and instrumentalities of his illegal drug related activities inside the black pickup truck. <u>See</u> Howell Aff. at 5. Howell asserts that marijuana was found growing on Jackson's property, a black pickup truck was seen on said property, and Jackson owns a black Dodge Ram pickup truck. Based on the totality of the circumstances, the Court finds that Howell's affidavit demonstrates a substantial basis for probable cause to believe that contraband would be found in Jackson's pickup truck.

---

Pickup truck" on page 5, paragraph 16 of the affidavit. Louis Danielson is an alleged associate of Jackson and, although the two men were indicted separately, DEA HIDTA investigated their activities together, believing that the two were engaged in a marijuana conspiracy. Ultimately, Howell's drafting error is immaterial because, even if the truck had been owned by Danielson, Howell articulated a sufficient nexus between Jackson, the pickup truck, and two different plots of land owned by Jackson that were allegedly being used for the purposes of growing marijuana.

### III. PARTICULARITY AND OVERBREADTH

#### A. <u>Standard of Review</u>

The Fourth Amendment provides that warrants must "particularly describ[e] the place to be searched and the persons or things to be seized." U.S. Const. amend. IV. Search warrants violate the Fourth Amendment if they authorize "a general exploratory rummaging in a person's belongings." <u>Coolidge v. New Hampshire</u>, 403 U.S. 443, 467 (1971).[5] Jackson claims that the warrant in this case violated the particularity requirement, giving government agents unfettered discretion to search the property located at #212 Estate Hannah's Rest in Frederiksted, St. Croix and the black Dodge Ram pickup truck. <u>See</u> Def.'s Mem. in Supp. of Mot. to Suppress at 4-7.

The scope of a warrant must be limited by the probable cause on which warrant is based and the authorization to search can never include more than is covered by the showing of probable cause. <u>See</u> <u>United States v. Harvey</u>, 2 F.3d 1318, 1322 (3d Cir. 1993); <u>Ritter</u>, 416 F.3d at 263; <u>In re Grand Jury Subpoena Dated December 10, 1987</u>, 926 F.2d 847, 856-57 (9th Cir. 1991). Requiring particularity in warrants ensures that the judge issuing the warrant is fully apprized of the scope of the search and can accurately determine whether the entire search is

---

[5] For example, warrants requesting to search for the following materials have been struck down as general warrants: (1) evidence of "smuggled goods," <u>Boyd v. United States</u>, 116 U.S. 616 (1886); (2) evidence of "obscene materials," <u>Marcus v. Search Warrant</u>, 367 U.S. 717 (1961); (3) evidence of "books, records, pamphlets, cards, lists, memoranda, pictures, recordings, and other written instruments concerning the Communist Party of Texas," <u>Stanford v. Texas</u>, 379 U.S. 476 (1965); (4) evidence of "illegally obtained films," <u>United States v. Cook</u>, 657 F.2d 730 (5th Cir. 1981); and (5) evidence of "stolen property," <u>United States v. Giresi</u>, 488 F. Supp. 445 (D.N.J. 1980).

supported by probable cause.[6]  United States v. Spilotro, 800 F.2d 959, 963 (9th Cir. 1986); see

Coolidge, 403 U.S. 443, 467; Yusuf, 461 F.3d at 393.

**B.  Discussion**

Jackson argues that the warrant in this case lacked particularity and was constitutionally

overbroad because it authorized seizure of a wide array of personal documents and records.[7] See

Def.'s Mem. in Supp. of Mot. to Suppress at 4-6.  The warrant authorizes seizure of specific

categories of documents including "bank records, monthly statements of account checks, deposit

slips, wire transfer applications, savings passbooks, certificates of deposit, monetary instruments,

or other documents and instrumentalities relating to the obtaining, movement, or securing of

money."  Additionally, the warrant authorizes seizure of "equipment used in the cultivation of

marijuana," "books, magazines, papers, notes and contact information related to the cultivation

of marijuana;" "identification documents," "records relating to foreign and domestic travel,"

"records of asset acquisitions" and "other items constituting proceeds of criminal activity."

Defendant claims that "the warrant failed to restrict government agents in any meaningful way,

converting the warrant into the type of general warrant prohibited by the Fourth Amendment."

Id. at 5-6.

_____

[6] There is a distinction between a general warrant, which is invalid because it vests the "executing officers with unbridled discretion to conduct an exploratory rummaging through [the defendant's] papers in search of criminal evidence," and an overly broad warrant, which "'describe[s] in both specific and inclusive general terms what is to be seized," but "authorizes the seizure of items as to which there is no probable cause." United States v. Ninety-Two Thousand Four Hundred Twenty-Two Dollars & Fifty-Seven Cents ($ 92,422.57), 307 F.3d 137, 149 (3rd Cir. 2002) (quoting United States v. Christine, 687 F.2d 749, 753 (3d Cir. 1982)).  An overly broad warrant can be redacted to strikeout those portions that are invalid for lack of probable cause, maintaining the remainder of the warrant that satisfies the Fourth Amendment. Id. On the other hand, the only remedy for a general warrant is to suppress all evidence obtained thereby. Id. at 758 ("It is beyond doubt that all evidence seized pursuant to a general warrant must be suppressed."); see United States v. Yusuf, 461 F.3d 374, 393 (3d Cir. 2006).

The breadth of items to be searched and seized depends upon the particular factual context of each case and also the information available to the investigating agent that could limit the search at the time the warrant application is given to the magistrate.  See Yusuf, 461 F.3d at 396.  In United States v. American Investors of Pittsburgh, 879 F.2d 1087 (3d Cir. 1989), the government sought twenty-three categories of documents as evidence of money laundering and the defendants argued that the search was unconstitutionally overbroad.  The Third Circuit Court of Appeals disagreed, noting that a broad range of documents were required to be searched to "sort[] out the details of th[e] sophisticated scheme."  Id. at 1106.  The court explained that "[t]he fact that the warrant authorized a search for a large amount of documents and records does not necessarily render the search invalid so long as there exists a sufficient nexus between the evidence to be seized and the alleged offenses."  Id. at 1105-06; see Yusuf, 461 F.3d at 393; see also United States v. Kepner, 843 F.2d 755 (3d Cir. 1988) (holding that search warrant seeking "documents, records, and personal effects" of defendants was sufficiently particular and was not impermissibly overbroad).

After reviewing the application in the present case, the Court concludes that the warrant did not violate the particularity principle, as the warrant was limited in that it specified that agents were searching for evidence of a specifically enumerated federal crime[8] and the evidence sought related to drug trafficking activities.  The warrant in this case clearly describes the automobiles as well as the specific locations of the houses to be searched.  The warrant authorizes the seizure of only those items which tend to show Jackson's involvement in the criminal activity being investigated.

---

[8] The search warrant states that it "concern[s] a violation of 21 United States Code, Section 856."

It is important to remember that the government was conducting an investigation into marijuana cultivation and distribution. The Third Circuit has stated that the government is to be given flexibility regarding the items to be searched and seized when the criminal activity deals with financial transactions. Id.; see Christine, 687 F.2d at 760; Yusuf, 461 F.3d at 393. In this case, the government needed to search for a broad array of items that provide evidence of a drug trafficking operation. Such items include documents relating to financial transactions and asset acquisitions, which are needed to piece together the scope of Defendant's alleged criminal activities. The specific categories of documents to be seized, including "bank records, monthly statements of account checks, deposit slips, wire transfer applications, savings passbooks, certificates of deposit, and monetary instruments," are all probative of the cash flow coming into and going out of Defendant's alleged drug trafficking operation, and could establish the criminal activities the government has alleged in this case. Id.; see Attachment 1 to Search Warrant issued on March 31, 2009.

Given the nature of the alleged crime and the limitation on the items to be seized, the Court finds that the warrant here was drafted with sufficient particularity. The warrant is limited in scope and is not overbroad with respect to the particular items to be seized. Therefore, the warrant satisfies the specificity mandated by the Fourth Amendment to protect against the threat to individual privacy. See Standford v. Texas, 379 U.S. 476 (1965); Anderson v. Maryland, 427 U.S. 463, 482 (1976).

## IV. CONCLUSION

For the reasons stated above, the Court finds that, with respect to the search warrant issued by the Magistrate Judge on March 31, 2009, there was probable cause to issue the

warrant. Because the requirements for a valid search warrant were satisfied, Defendant's Motion

to Suppress is **DENIED**.


      **ENTERED this 2nd day of October, 2009.**

                                /s/
                            _____
                            **HONORABLE RAYMOND L. FINCH**
                            **SENIOR U.S. DISTRICT JUDGE**